UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x
UNITED STATES OF AMERICA,

24 CR 693 (KMK)(VR)

-vs-

ARRAIGNMENT & PLEA

TARRY TAE SUP SHIN,

Defendant(s).
--------------------------------------x

*Proceedings recorded via digital recording device*

United States Courthouse
White Plains, New York

December 13, 2024

B e f o r e: THE HONORABLE VICTORIA REZNIK,
United States Magistrate Judge

A P P E A R A N C E S:

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
KATHRYN WHEELOCK
Assistant United States Attorney

LAW OFFICE OF STEPHEN R. LEWIS
STEPHEN R. LEWIS
Attorney for Defendant

THE DEPUTY CLERK: This is the matter of the United States v. Shin, case no. 24 mag 3506.

Starting with the attorney for the Government, can you please state your name for the record.

MS. WHEELOCK: Good afternoon, your Honor. Kate Wheelock for the United States.

THE COURT: Good afternoon.

MR. LEWIS: And good afternoon, Judge. Stephen Lewis, appearing with Mr. Shin this, this...afternoon.

THE COURT: Good afternoon.

And good afternoon, Mr. Shin.

THE DEFENDANT: Good afternoon.

THE COURT: My name is Magistrate Judge Reznik.

So, Ms. Wheelock, I just want to confirm that we're here today for a waiver of indictment, to arraign the defendant, and then to enter a plea of guilty. Is that right?

MS. WHEELOCK: Correct.

THE COURT: Okay, and do you know if a Rule 5(f) instruction was already issued or do you...you don't know.

MS. WHEELOCK: I believe it was, but I don't know off the top of my head.

THE COURT: Okay, thanks.

So, Ms. Altimari, will you please place the defendant under oath or affirmation, please.

THE DEPUTY CLERK: Mr. Shin, can you please stand and

raise your right hand.

TARRY TAE SUP SHIN,

Sworn.

THE DEPUTY CLERK: Thank you.

THE COURT: Okay, you can be seated. Thank you.

Mr. Shin, it is important for you to understand that if you knowingly make a false statement during these proceedings, you could be subject to prosecution for perjury or for making a false statement to the Court and you could face a punishment of up to five years in prison and a $250,000 fine if convicted of those offenses. That punishment would be separate and apart from any sentence that you may be facing on the crimes charged in the Information.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay.

Will you please state your full name for the record.

THE DEFENDANT: Tarry Tae Sup Shin.

THE COURT: How old are you?

THE DEFENDANT: Thirty-three years old.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Are you a naturalized citizen?

THE DEFENDANT: I was, I was born here.

THE COURT: Okay. Do you have any difficulty reading,

writing, speaking, or understanding English?

THE DEFENDANT: No.

THE COURT: How far did you go in formal school?

THE DEFENDANT: High school, graduated.

THE COURT: Are you currently or have you recently been under the care of a doctor, psychiatrist, or a psychologist for any reason?

THE DEFENDANT: No.

THE COURT: Have you taken any mind-altering drugs, medicine, or pills or consumed any alcohol in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Do you understand what is happening in today's proceeding?

THE DEFENDANT: Yes.

THE COURT: Does either counsel have any objection to Mr. Shin's ability to proceed either with respect to the waiver of indictment or the plea allocution?

Ms. Wheelock?

MS. WHEELOCK: No.

THE COURT: Mr. Lewis.

MR. LEWIS: No, Judge.

THE COURT: Okay.

Mr. Shin, I have before me an Information containing

the charges against you. You have been charged in Count One with conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). The Information also includes a forfeiture allegation and a substitute assets provision.

Mr. Shin, have you received a copy of the Information?

THE DEFENDANT: Yes.

THE COURT: Have you had an opportunity to review it with your attorney?

THE DEFENDANT: Yes.

THE COURT: Have you had sufficient time to consult with your attorney about the Information for purposes of today's proceeding?

THE DEFENDANT: Yes.

THE COURT: Do you understand the charges against you?

THE DEFENDANT: Yes.

THE COURT: Mr. Lewis, just to confirm, have you received a copy of the Information and reviewed it with your client?

MR. LEWIS: I have, your Honor.

THE COURT: And are you satisfied that Mr. Shin understands the charges against him?

MR. LEWIS: I am.

THE COURT: Does Mr. Shin waive any further public reading of the Information?

MR. LEWIS: He does.

THE COURT: Okay.

Mr. Shin, the document containing the charges against you is called an Information, and it was issued by the United States attorney for the Southern District of New York.

Under the United States Constitution, you have the right to be charged by an indictment issued by a grand jury instead of by an information like this one. The Information filed by the U.S. Attorney is simply a notice of the charges against you. Because you are charged with a felony offense, you can be charged by Information only if you waive your constitutional right to an indictment. An indictment is when a grand jury hears evidence about the alleged offenses and determines that there is probable cause to believe that you committed the alleged crimes.

A grand jury is a group of 23 ordinary citizens who are called to jury service to hear the Government's evidence in criminal cases and decide whether the evidence is sufficient to justify bringing you to trial. Sixteen members of the grand jury must be present to hear any given case, and for you to be indicted, at least twelve of those grand jurors must find that there is probable cause to believe that an offense was committed and that you are the person who committed it.

You have a right to have these charges considered by a grand jury. Without your consent, these charges could not even be brought unless approved by the grand jury, but if you give up

your right to have the charges against you presented to the grand jury, the case will proceed against you based on the U.S. Attorney's Information just as if you had been indicted.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed with your attorney the advantages and disadvantages of waiving indictment?

THE DEFENDANT: Yes.

THE COURT: Have any threats or promises been made to you to get you to waive indictment?

THE DEFENDANT: No.

THE COURT: I have a Waiver of Indictment form in front of me. It appears to have been signed by you, Mr. Shin.

Ms. Altimari, will you please verify the defendant's signature for me, please. I note that it needs to be dated as well at the bottom. Okay.

THE DEPUTY CLERK: Mr. Shin, I have a Waiver of Indictment form signed today, December 13th. Is this your signature on this waiver of indictment (showing)?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Before you signed it, did your attorney review it and explain this waiver of indictment to you?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that you are under no obligation to waive indictment?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that if you choose not to waive indictment and the Government wishes to prosecute you, they will have to present your case to a grand jury, which may or may not indict you?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: And do you understand what a grand jury is?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Thank you.

THE COURT: Mr. Shin, do you wish to give up your right to be charged by a grand jury?

THE DEFENDANT: Yes.

THE COURT: I find that the defendant Mr. Shin's waiver is knowingly and voluntarily made, and the Court accepts the waiver. Let the record reflect that the defendant has waived indictment.

How does Mr. Shin wish to plead to the charges in the Information for purposes of arraignment only?

MR. LEWIS: Not guilty, Judge.

THE COURT: Okay, a plea of not guilty will be entered. The record should reflect that the defendant is now arraigned.

So before we move to the plea allocution portion of the proceeding, I'm going to issue my Rule 5(f) instruction to

the prosecution.

I direct the prosecution to comply with its obligation under *Brady v. Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution. Possible consequences for non-compliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will enter a written order that more fully describes this obligation and the possible consequences of failing to meet it. I direct the prosecution to review that order and to comply with it.

Ms. Wheelock, does the prosecution confirm that it understands its obligations and will fulfill them?

MS. WHEELOCK: Yes.

THE COURT: Okay.

Mr. Shin, I want to advise you that this is not a trial. It's my understanding that you have decided to enter a guilty plea. This portion of the proceeding is for the purpose of ensuring that you are aware of your rights in connection with your plea and that any waiver of those rights is knowing and voluntary before entering your guilty plea.

If at any time you do not hear or understand one of my questions, please let me know and I'll try to rephrase it or

explain it to you. If at any point you want to talk to your attorney, just let me know and I'll let you do that.

Do you understand?

THE DEFENDANT: Yes, thank you.

THE COURT: I want to advise you that you have the right to be represented by counsel throughout the entire case and you may consult with your attorney at any stage of this proceeding.

You also have the right to remain silent. Any statement that you do make may be used against you. You have this right to remain silent even if you have already made statements to law enforcement officers.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay.

(Discussion off the record)

THE COURT: We're just going to pause for a second to check the audio, because a transcript will need to be made of this proceeding.

(Brief pause)

THE COURT: Mr. Shin, as I mentioned, this proceeding is called a plea allocution. I want you to understand that you have an absolute right to have this plea allocution conducted before a United States District Judge. It is the District Judge, in this case Judge Karas, who will impose the sentence in

your case.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I am a United States Magistrate Judge. If you consent, then I will conduct your plea allocution and then I will make a recommendation to Judge Karas in which I will recommend whether or not he should accept your plea. I will make that recommendation based on the information that is brought out during today's proceedings.

It is important for you to understand that the Court will not accept your guilty plea unless the Court is satisfied that you fully understand all of your rights and that you are, in fact, guilty.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Is it your wish that I conduct the plea allocution?

THE DEFENDANT: Yes.

THE COURT: I have a Consent To Proceed Before A United States Magistrate Judge On A Felony Plea Allocution in front of me, and it appears to have been signed by you, Mr. Shin.

Ms. Altimari, will you please verify defendant's signature for me.

And in the meantime, Mr. Lewis, can you confirm that

you reviewed this form with your client before today's proceedings?

MR. LEWIS: Today's -- today, yes.

THE COURT: Yes, okay, thank you.

THE DEPUTY CLERK: Mr. Shin, I have a form entitled Consent To Proceed Before A Magistrate Judge On A Felony Plea Allocution, signed today, December 13th. Is this your signature on the bottom this consent form (showing)?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Before you signed it, did you read it and review it with your attorney?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Thank you.

THE COURT: Mr. Shin, what this form says essentially is that you understand that you have the right to have this plea taken by a United States District Judge, but that you are agreeing to have this plea taken by me instead, a United States Magistrate Judge.

Is that correct?

THE DEFENDANT: Yes.

THE COURT: Did anyone threaten you or coerce you or promise you anything in order to get you to sign this consent form?

THE DEFENDANT: No.

THE COURT: Did you sign the form freely and

voluntarily?

THE DEFENDANT: Yes.

THE COURT: Ms. Wheelock, do you know of any reason why I should not accept this consent to proceed before me?

MS. WHEELOCK: No.

THE COURT: Mr. Lewis?

MR. LEWIS: No, your Honor.

THE COURT: Mr. Shin, I find that you are fully competent and understand the proceedings before you. I also find that you are capable of waiving your right to appear before a United States District Judge in order to enter your guilty plea. I therefore accept the consent form, which has been signed and is now part of the court record.

The consent form will be marked Court Exhibit No. 1 and will remain in the Court file.

Mr. Shin, I've been informed that you wish to change your plea and to enter a guilty plea as to certain charges. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Before deciding whether to accept your guilty plea, I'm going to ask you a series of questions. It is very important that you answer these questions honestly and completely. Again, the purpose of these proceedings is to make sure that you understand your rights, to decide whether you are pleading guilty of your own free will, and to make sure that you

are pleading guilty because you are guilty and not for some other reason.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Again, if you do not understand any of my questions, just let me know and I'll try to explain them to you or rephrase them. Again, if at any point you want to speak with your lawyer, just let me know and I'll let you do that.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Okay.

We already reviewed the charges in the Information with you. Have you had sufficient time to speak with your attorney about these charges and about how you wish to plead today?

THE DEFENDANT: Yes.

THE COURT: Has your attorney told you the consequences of pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Have you told your attorney everything you know about this case?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorney's representation of you?

THE DEFENDANT: Yes.

THE COURT: I have a plea agreement dated December 13th, 2024, which has been signed by all parties as of December 13, 2024, today. The plea agreement will be marked as Court Exhibit No. 2 and the original plea agreement will remain in the custody of the Government's attorney.

Ms. Wheelock, are there any substantive changes that were made to the plea agreement since it was submitted to the Court?

MS. WHEELOCK: No, just the addition of the Exhibit A and then the change of the date.

THE COURT: Okay, thank you.

Ms. Altimari, can you please verify Mr. Shin's signature on the plea agreement for me. Thank you.

THE DEPUTY CLERK: Mr. Shin, I have a plea agreement dated December 13th, 2024, signed today, December 13th. Is this your signature on page 7 of the plea agreement (showing)?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Before you signed the plea agreement, did you read it and review it with your attorney?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Thank you.

THE COURT: Mr. Lewis, did you review each and every part of this plea agreement with your client?

MR. LEWIS: Judge, that plea agreement was reviewed multiple times from November to the present. The exact plea

agreement you have I only got today, and I've seen the addition that was made having to do with the preliminary consent of forfeiture order, and that has been reviewed with the client today, so I'm satisfied he is fully aware of every aspect of that plea agreement.

THE COURT: Okay. Thank you, Mr. Lewis.

Mr. Shin, are you satisfied that you understand the entire plea agreement?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions for me or for your lawyer about what your plea agreement says?

THE DEFENDANT: No.

THE COURT: Does the plea agreement contain the complete agreement between you and the Government in connection with this case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that anything that is not set forth in the plea agreement or told to me at this time on the record will not be binding on the outcome of your case?

THE DEFENDANT: Yes.

THE COURT: Ms. Wheelock, is there anything beyond the written plea agreement I should know about?

MS. WHEELOCK: No.

THE COURT: Mr. Lewis, anything else?

MR. LEWIS: No, your Honor.

THE COURT: Okay.

Mr. Shin, did you sign the plea agreement freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Did anyone force you or coerce you or threaten you or promise you anything other than what is set forth in the plea agreement in order to get you to sign it?

THE DEFENDANT: No.

THE COURT: Mr. Shin, if you are convicted of the charges contained in the Felony Information, either after trial or by plea of guilty, you would be subject on Count One to a maximum term of imprisonment of 40 years, a mandatory minimum term of imprisonment of five years, a maximum term of supervised release of life, a mandatory minimum term of supervised release of four years, a maximum fine, pursuant to Title 18 U.S.C. § 3571 and Title 21 U.S.C. § 841(b)(1)(B), of the greatest of $5 million, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you are sentenced to a term of imprisonment, even if you are sentenced to the maximum term of imprisonment, you may also be sentenced to a term of supervised

release. If you then violate the conditions of your supervised release, you could be sentenced to an additional term of imprisonment for violating the conditions of your supervised release. In this case, that additional term of imprisonment would be up to three years.

In addition, if you violate the conditions of your supervised release, you would not receive credit for any time already served in prison or for time served on supervised release.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. In your plea agreement, you also have admitted the forfeiture allegation with respect to Count One of the Information and you have agreed to forfeit to the United States a sum of money equal to $312,500 in U.S. currency, which was seized from you on October 2nd, 2023, in connection with your arrest. I understand that there's an Exhibit A that relates to that forfeiture.

Ms. Wheelock, is there other forfeiture or restitution that Mr. Shin may be subject to?

MS. WHEELOCK: No, your Honor, just what you described.

THE COURT: Okay.

Mr. Shin, do you understand that these are the possible sentences that could be imposed following a plea of

guilty in this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay.

Do you also understand that you are pleading guilty to a felony offense and that this adjudication may deprive you of certain civil rights which may include the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any type of firearm, including rifles and shotguns, the right to be considered for certain types of employment or to be bonded or to serve in the United States military, and the right to possess or obtain certain government-issued licenses, including licenses that may be required in certain professions and occupations?

THE DEFENDANT: Yes.

THE COURT: For a narcotics offense, one effect of a guilty plea is that you may be ineligible for certain federal and federally funded benefits that you would otherwise have been eligible for, including, but not limited to, social security, food stamp benefits, education loans or grants, and public housing or housing subsidies.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that this consequence may be for a limited period of time or it may be a permanent barrier to your obtaining these benefits depending on the crime

of conviction and your prior criminal record?

THE DEFENDANT: Yes.

THE COURT: Have you discussed all of these consequences with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand that these are all the possible legal consequences of a guilty plea?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the United States Sentencing Commission has issued guidelines for judges to follow in determining the appropriate sentence in a criminal case?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that these sentencing guidelines are not mandatory, but they must be considered by the Court, along with other factors listed at 18 U.S.C. § 3553, when the judge determines the appropriate sentence to impose, including possible departures from the guidelines?

THE DEFENDANT: Yes.

THE COURT: Have you and your attorney talked about how the sentencing guidelines might apply in your case?

THE DEFENDANT: Yes.

THE COURT: The plea agreement in this case sets forth a stipulated guidelines range of 87 to 108 months imprisonment, with a mandatory minimum term of 60 months in prison. It also

includes an applicable fine range of $30,000 to $5 million.

I'll note that it states in this plea agreement that under Title 21 U.S.C. § 841(b)(1)(B), that statute requires a statutory minimum of 60 months. Accordingly, absent relief from the statutory minimum sentence, you would be sentenced to at least 60 months.

Do you understand that this range in your plea agreement is simply an agreement between you and your lawyer and the lawyer for the Government and that it is not binding on the District Judge when he imposes the sentence in your case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the District Judge will consider the guidelines, but will impose a sentence in accordance with the statute, which in this case means that the prison term will not be more than 40 years and not less than five years?

THE DEFENDANT: Yes.

THE COURT: Okay.

Do you understand that the Court will not be able to determine the appropriate sentence until after the pre-sentence report has been prepared and until you and your attorney, as well as the Government, have had an opportunity to challenge the facts reported in the pre-sentence report, as well as the calculation of the sentencing guideline range and any sentence recommendation in that report?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that if there are any objections to the pre-sentence report, that those objections will be ruled on by the Court and if necessary, a hearing will be held to determine what information is relevant to the Court's sentencing determination?

THE DEFENDANT: Yes.

THE COURT: Your plea agreement includes a waiver of certain appeal rights which I'd like to review with you briefly now.

You have agreed that you will not file a direct appeal or otherwise challenge your conviction. You've also agreed that you will not file a direct appeal nor bring a collateral challenge, including, but not limited to, an application under Title 28 U.S.C. § 2255 and/or § 2241, of any sentence within or below the stipulated guidelines range of 87 to 108 months imprisonment.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: You've also agreed not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum or any condition of supervised release imposed by the Court for which you had notice and an opportunity to object.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You've also agreed not to appeal or bring a collateral challenge of any forfeiture amount that is less than or equal to $312,500, not to appeal or bring a collateral challenge of any fine that is less than or equal to $5 million, and not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $100.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you disagree with the Court's sentencing decision, that will not give you a basis for withdrawing your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that parole has been abolished and if you are sentenced to a term of imprisonment, you will not be eligible for early release on parole?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you do not have to plead guilty; you have an absolute right to persist in your plea of not guilty and to have the matter go to trial by judge or jury?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you persist in your plea of not guilty, you are entitled to have a speedy and

public trial of your case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that at any trial of this matter, you would be presumed innocent and that presumption would remain with you until the Government proves each and every element of the crimes charged beyond a reasonable doubt to the satisfaction of the judge if it's a judge trial or to the unanimous satisfaction of the jury if it's a jury trial?

THE DEFENDANT: Yes.

THE COURT: At such a trial, you would have the right, with the assistance of your attorney, to confront and cross-examine the witnesses against you. You would have the right to call witnesses to testify for you and to have subpoenas issued to compel witnesses to give testimony.

You would also have the right to testify and present evidence at your trial, but you could not be forced to testify. If you decided not to testify, your decision to remain silent could not be used against you in any way.

At your trial, you would also have the right to the assistance of an attorney and to have an attorney appointed to represent you if you could not afford counsel of your own. Do you understand that if you plead guilty to the charges in this Felony Information, you would be giving up your right to a trial and except for the right to counsel, you would also give up all the other rights which I just explained to you?

THE DEFENDANT: Yes.

THE COURT: Mr. Shin, have you clearly heard and understood everything I have said to you?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions for me or for your attorney about anything I have said or anything I have asked you?

THE DEFENDANT: No, your Honor.

THE COURT: Ms. Wheelock, is there anything else you'd like me to review with Mr. Shin?

MS. WHEELOCK: No, your Honor.

THE COURT: Mr. Lewis?

MR. LEWIS: No, your Honor.

THE COURT: Okay.

Ms. Wheelock, what are the elements of the offense and what is the Government prepared to prove at trial in order to establish those elements?

MS. WHEELOCK: Yes, your Honor, to prove Count One of the Information, the Government would have to establish three elements beyond a reasonable doubt:

First, the existence of a conspiracy, so in other words, that there was an agreement or understanding to violate the laws that make it illegal to distribute controlled substances or to possess controlled substances with the intent to distribute them;

Second, that the defendant unlawfully, knowingly, and intentionally joined the conspiracy with the intent to achieve the illegal object of the conspiracy; and then

Third, that the object of the conspiracy was to distribute 500 grams or more of mixtures and substances containing a detectable amount of cocaine.

The Government would also have to prove by a preponderance of the evidence that venue in the Southern District of New York is proper.

So now, moving to how the Government would prove these elements, if this case were to proceed to trial, the Government would prove beyond a reasonable doubt that on or about September 26th, 2024, the defendant joined a FaceTime call with two co-conspirators, one of whom was his co-defendant on the complaint and then the other who is a controlled source for law enforcement, and that on that FaceTime call, he agreed knowingly and intentionally to purchase 50 kilograms of cocaine from the controlled source, who was the seller.

Then that on or about October 2nd, 2024, the defendant picked his co-defendant and co-conspirator up at the airport in Philadelphia. Together, they drove to Yonkers, New York, to meet the seller. The defendant before driving to Yonkers had gone to an apartment building to pick up the over $300,000 of cash, put that in the car. The defendant and the co-defendant drove to Yonkers, New York, where they had planned to meet the

seller of the cocaine, and then at that point, the defendant was arrested by law enforcement at the agreed-upon meet-up spot in Yonkers.

The Government's evidence at trial would include, among other things, controlled source testimony regarding his conversations with the defendant and the co-defendant regarding their agreement and plan to purchase the cocaine, law enforcement testimony regarding surveillance done of the defendant in Yonkers at the meet-up spot, the cash seized from the defendant upon his arrest, photographs of the FaceTime call that I spoke about a few moments ago in which the defendant communicated with the controlled source about buying cocaine, communications between the co-defendant and the controlled source regarding where they would meet, as well as recordings of calls and messages exchanged while the defendant was in the car with the co-defendant traveling to Yonkers from Pennsylvania; and then the co-defendant's statement.

THE COURT: Thank you, Ms. Wheelock.

Mr. Shin, did you hear and understand everything that the Assistant U.S. Attorney just said?

THE DEFENDANT: Yes, your Honor.

THE COURT: At this time, how do you wish to plead to Count One in the Information?

THE DEFENDANT: Guilty.

THE COURT: Has anyone threatened you or coerced you

or pressured you improperly in order to get you to plead guilty to this charge?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises to you other than what is set forth in the plea agreement in order to induce you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made any specific promises to you about what the sentence of the Court will be?

THE DEFENDANT: No.

THE COURT: Mr. Shin, will you tell me in your own words what you did to commit this crime.

THE DEFENDANT: Yes.

I conspired on September to October 2nd and I participated in a conspiracy to purchase and distribute multi-kilograms of cocaine, traveled to Yonkers, New York, from Pennsylvania with my co-conspirator to purchase kilograms of cocaine.

In Yonkers, I understand it's in the Southern District of New York.

I realize what I was doing was illegal and wrong, but I did it anyways. I regret what I did and am ashamed of my conduct.

I also admit the forfeiture allegations and consent that the money that was in the car and seized by the police at

the time of my arrest shall be forfeited.

THE COURT: Okay, thank you, Mr. Shin.

And is venue stipulated by counsel?

MR. LEWIS: It is.

THE COURT: Or -- okay.

And, Ms. Wheelock, is there anything else you'd like me to elicit from Mr. Shin?

MS. WHEELOCK: The quantity of the cocaine.

THE COURT: Right. I think I heard a kilogram? Or --

MR. LEWIS: He said multi-kilograms.

MS. WHEELOCK: Oh.

THE COURT: Multi-kilograms, okay.

Is that correct, Mr. Shin?

THE DEFENDANT: Yes, your Honor.

THE COURT: What was the amount of cocaine that was involved?

THE DEFENDANT: Fifty kilograms.

MR. LEWIS: May I have a moment?

THE COURT: Sure.

(Counsel consults with defendant)

THE DEFENDANT: Yeah, it was 25 kilograms.

THE COURT: Okay.

Is there some dispute about the amount?

MS. WHEELOCK: Apparently so. Regardless, the amount -- a kil -- even one kilogram is over 500 grams, so I don't

think there's an issue with the allocution on that point, um...

THE COURT: But does it matter for purposes of sentencing? Is that why you're...

MS. WHEELOCK: It...yes, your Honor, that's why I'm, I'm just mulling it over for a moment.

MR. LEWIS: Judge, we're pleading guilty to the (b)(1)(B), and as long as it was more than 50 grams -- 500 grams, I'm sorry, that satisfies that, and there's an issue having to do -- he's, he's saying on that day, there was an agreement to purchase 25 kilograms in Yonkers, and I don't think that would be disputed by the Government.

THE COURT: Ms. Wheelock?

MS. WHEELOCK: So there was an agreement to purchase 50 grams. The evidence indicates that the defendant and his co-defendant were planning to make two trips to Yonkers that day, that they had agreed that the deal would be for 50 grams, that they would first do 25 grams on this --

MR. LEWIS: Kilograms.

MS. WHEELOCK: -- first -- kilograms, excuse me.

That they would first travel an initial trip to Yonkers for the purchase of 25 kilograms and then that the plan was to do another trip for an additional 25 kilograms.

I think, as your Honor noted, this is relevant, you know, potentially, for sentencing, but because the (b)(1)(B) amount is 500 grams or more, the allocution, you know, satisfies

the elements of the offense.

THE COURT: Understood.

So just to confirm, Mr. Shin, am I correct that the amount that you intended to distribute was more than 500 grams --

THE DEFENDANT: Yes --

THE COURT: -- of cocaine?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. So that satisfies for purposes of the allocution. I'll leave it to the parties in sentencing to talk about how the total amount plays out.

Is that okay with Ms. Wheelock?

MS. WHEELOCK: Yes.

THE COURT: And Mr. Lewis?

MR. LEWIS: Yes, Judge.

THE COURT: Okay, thank you.

So is there anything else, Ms. Wheelock, you'd want me to elicit from Mr. Shin?

MS. WHEELOCK: No.

THE COURT: Okay.

Mr. Lewis?

MR. LEWIS: No, Judge.

THE COURT: Okay.

Mr. Lewis, do you know of any reason why the Court should not accept Mr. Shin's guilty plea?

MR. LEWIS: I don't.

THE COURT: Okay.

Ms. Wheelock, do you know of any reason?

MS. WHEELOCK: No, your Honor.

THE COURT: Okay.

Mr. Shin, in light of everything that you have said here today or in light of everything that has been said here today by everyone, including me, is it still your wish to plead guilty to the charges in the Felony Information?

THE DEFENDANT: Yes.

THE COURT: On the basis of the allocution and the responses to my questions, I find that the defendant Mr. Shin is fully competent and capable of entering an informed plea. I am satisfied that you understand your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence that may be imposed.

Based on this plea allocution, I find the plea is knowing and voluntary and is supported by an independent factual basis for each and every element of the crime charged. Accordingly, I respectfully report and recommend to Judge Karas that the plea be accepted and that the defendant be adjudged guilty of the offense charged in the Felony Information.

I direct that a pre-sentence investigation be conducted by the United States Department of Probation and that a pre-sentence report be prepared. Within 14 days from today,

counsel must contact the Department of Probation on the ground floor of this building to schedule an interview for Mr. Shin with a representative of the Department of Probation.

Mr. Shin, you must be fully honest and truthful during that interview, because if it comes to the Court's attention that you have provided false, incomplete, or misleading information, that may be used against you at the time of sentencing.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Ms. Wheelock, the prosecution case summary for purposes of the pre-sentence report is to be delivered to the Probation Department no later than 14 days from today.

Ms. Altimari, what is that date for the record?

THE DEPUTY CLERK: That date, your Honor, is December 27th.

THE COURT: I also direct the Clerk of Court to provide a transcript of these proceedings within 30 days setting forth my report and recommendation to Judge Karas. That transcript will come to me for review.

The matter is adjourned for sentencing. We have a sentencing date of April 21st, 2025, at two p.m. before Judge Karas.

Is there anything else that needs to be addressed today, Ms. Wheelock?

MS. WHEELOCK: No, your Honor.

THE COURT: Mr. Lewis?

MR. LEWIS: Yes, Judge. Do we have a number? An index number?

THE DEPUTY CLERK: I will get that now after the -- because I have to contact the arraignment unit.

MR. LEWIS: Okay.

THE COURT: All right, anything else?

MR. LEWIS: No.

THE COURT: Okay. This matter's adjourned.

I wish you luck, Mr. Shin. Thank you.

Certified to be a true and accurate
transcript of the digital electronic
recording to the best of my ability.
________________________
Tabitha R. Dente, RPR, RMR, CRR
U.S. District Court
Official Court Reporter